**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DELORES SHOOK,

                                        Plaintiff,

          v.

NYS CENTRAL REGISTER OF CHILD ABUSE
AND MALTREATMENT, et al.,

                                        Defendants.

No. 1:24-CV-1218
(AJB/PJE)

---

**APPEARANCES:**

Delores Shook
1737 U.S. Route 9W
Lot #73
Selkirk, New York 12158
Plaintiff pro se

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

### I.  **In Forma Pauperis**

          Plaintiff pro se Delores Shook ("plaintiff") commenced this action on October 3, 2024, by filing a complaint.  *See* Dkt. No. 1.  In lieu of paying this Court's filing fee, plaintiff submitted an application for leave to proceed in forma pauperis ("IFP").  *See* Dkt. No. 2.  The undersigned has reviewed plaintiff's IFP application and determines that she

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(d).

financially qualifies to proceed IFP.[2]  Pursuant to this review, this Court must now assess the merits of plaintiff's complaint pursuant to 28 U.S.C. §§ 1915; 1915A.[3]

## II.  **Initial Review**

### A.  **Legal Standards**

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action."  *Praileau v. Fischer*, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest."  *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks and citation omitted).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest.  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party

---

[2] Plaintiff is advised that although she has been granted IFP status, she is still required to pay any fees and costs she may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

[3] These requirements apply equally to non-prisoner pro se litigants.  *See* N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. §1915(e)(2) and 28 U.S.C. §1915A when an application to proceed in forma pauperis is filed.").

> from compliance with relevant rules of procedural and substantive law. . . .

*Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks, citations, and footnote omitted*); see also Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted).  Thus, the Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims.  Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with . . . the Federal Rules of Civil Procedure."[4] *Kastner v. Tri State Eye*, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994)).[5]  Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to

---

[4] Hereafter, "Fed. R. Civ. P."
[5] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

relief." FED. R. CIV. P. 8(a)(2).  "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).  Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction . . .  and . . . a demand for the relief sought . . . ."  FED. R. CIV. P. 8(a).  Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct."  FED. R. CIV. P. 8(d).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  *Flores*, 189 F.R.D. at 55 (internal quotation marks and citations omitted).  A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims."  *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint."  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.

1988) (citations omitted).  However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* (citations omitted).

### III.  **Discussion**

### A.  **Plaintiff's Complaint**[6]

Plaintiff states that defendants have violated her Fourteenth Amendment rights. *See* Dkt. No. 1 at 5.  Plaintiff's complaint is based on the following events.  Plaintiff was awarded custody of her two minor grandchildren.  *See* Dkt. No. 1-1, 1-2.  On November 25, 2019, child protective services received a complaint that plaintiff and her daughter "engaged in a heated verbal argument that turned physical in the presence" of plaintiff's grandchildren.  Dkt. No. 1-8 at 7.  On November 26, 2019, CPS caseworkers Emelie Miller and Brendon Behan, together with two police officers, removed plaintiff's grandchildren from her home.  *See* Dkt. No. 1 at 5, 8; Dkt. No. 1-8 at 2-4.  On November 27, 2019, the New York State Child Abuse and Maltreatment Register ("State Central Register") notified plaintiff that she was "the subject of a report of suspected child abuse and maltreatment."[7] Dkt. No. 1-3 at 2.  On July 1, 2020, the State Central Register notified plaintiff that the CPS Report was returned as "indicated" and would remain in the State Central Register. Dkt. No. 1-6 at 2.  The notice also informed plaintiff of her right to challenge this

---

[6] Plaintiff included many attachments with her complaint.  *See* Dkt. Nos. 1-1, 1-2, 1-3, 1-4, 1-5, 1-6, 1-7, 1-8, 1-9, 1-10, 1-11, 1-12.  These attachments have also been reviewed in connection with the initial review of plaintiff's complaint.  *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.") (internal quotation marks and citations omitted).

[7] Hereinafter, "CPS Report."

determination and the process to request an amendment. *See id.* at 3. Plaintiff requested that the State Central Register "amend the report to unfounded." Dkt. No. 1-7 at 3.

On December 17, 2021, the New York State Office of Children and Family Services Bureau of Special Hearings ("Bureau of Special Hearings") issued a decision ordering the State Central Register to amend the CPS Report's findings from indicated to unfounded, seal the CPS Report, and amend the record of the report in the State Central Register. *See* Dkt. No. 1-7 at 10-11. On August 17, 2023, the Albany County Family Court entered a new custody order awarding plaintiff primary physical custody of her grandchildren and joint legal custody with her grandchildren's parents. *See* Dkt. No. 1-10 at 2-4.

Plaintiff claims that, to date, the State Central Register has not complied with the Bureau of Special Hearings' December 17, 2021, Order, failing to change the status of the CPS Report, seal the report, and update its records to reflect these changes. *See* Dkt. No. 1 at 16. Plaintiff requests an award of $5,000,000 "compensatory damages, for, [sic] pain, suffering, emotional distress, and reputation damages[,]" and a Court order directing the State Central Register "to change the status [sic] the alleged report from 'indicated' to 'unfounded' in their system and sealing this case per the Judges [sic] order from December 17, 2021." Dkt. No. 1 at 16.

B. **Analysis**[8]

---

[8] Plaintiff's civil cover sheet checks the box indicating "U.S. Government" as the basis of jurisdiction. *See* Dkt. No. 1-12. However, the United States Government is not a defendant in this action. *See generally* Dkt. No. 1. Reading plaintiff's complaint liberally and affording her due solicitude, it appears plaintiff likely intended to mean that her claims involve federal question jurisdiction. *See Cinotti v. Adelman*, 709 F. App'x 39, 40 (2d Cir. 2017) (summary order) ("[A]lthough [the plaintiff's] pro se complaint does not refer to 42 U.S.C. § 1983, the district court should have construed it liberally as asserting § 1983 claims, which provide a basis for federal question jurisdiction.").

Liberally construing plaintiff's complaint, plaintiff seeks to proceed pursuant to 42 U.S.C. § 1983[9] against the State Central Register; New York State Child Protective Services ("NYS CPS"); Linda Testa, Supervisor ("Testa"); Emilie Miller, Case Worker ("Miller"); and Brendan Behan, Case Worker ("Behan") for alleged violations of her Fourteenth Amendment due process rights.[10]  *See generally* Dkt. No. 1; *see also Triestman*, 470 F.3d at 475 ("This policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  More specifically, plaintiff alleges that NYS CPS and the individual defendants violated her Fourteenth Amendment rights by removing her grandchildren from her home and care without meeting their required burden for removal or following the notice procedures.  *See* Dkt. No. 1 at 5.  Plaintiff alleges that the State Central Register violated her Fourteenth Amendment rights by failing to amend the December 17, 2021, CPS Report from "indicated" to "unfounded" and to seal the report.  *See id.* at 16.

## 1. **Sovereign Immunity**

The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another

---

[9] Plaintiff's complaint also alleges that defendants violated her Fourth and Fifth Amendment Due Process rights; however, the substance of her complaint does not support a claim for relief on these grounds.  *See* Dkt. No. 1 at 5; U.S. CONST. amend. IV; U.S. CONST. amend. V.  Plaintiff's civil cover sheet also checks the box for "Other Personal Injury," but it is unclear how this is a personal injury matter.  *See* Dkt. No. 1-12.
[10] Plaintiff's complaint identifies the state entities as "NYS Central Register of Child Abuse and Maltreatment" and "NYS Child Protective Services."  Dkt. No. 1 at 1, 3.

State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.  Applying this principle, "[a]s a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress."  *Gerken v. Gordon*, No. 1:24-CV-00435 (MAD/CFH), 2024 WL 4608307, at *6 (N.D.N.Y. Oct. 29, 2024), *report and recommendation adopted,* No. 1:24-CV-435 (MAD/CFH), 2024 WL 5001402 (N.D.N.Y. Dec. 6, 2024) (quoting *Kisembo v. N.Y.S. Off. of Child. & Fam. Servs.*, 285 F. Supp. 3d 509, 519 (N.D.N.Y. 2018)); *see Garcia v. Paylock*, No. 13-CV-2868 (KAM), 2014 WL 298593, at *3 (E.D.N.Y. Jan. 28, 2014) ("Plaintiff's equal protection claims also may not be brought directly under the Fourteenth Amendment because the State has not waived its immunity or had that immunity abrogated pursuant to that constitutional amendment."). "This jurisdictional bar applies regardless of the nature of the relief sought."  *Gerken*, 2024 WL 4608307, at *6 (quoting *Murawski v. N.Y. State Bd. of Elections*, 285 F. Supp. 3d 691, 695 (S.D.N.Y. 2018) (*quoting Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).

"[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state."  *Gerken*, 2024 WL 4608307, at *7 (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)) (internal quotation marks and citation omitted); *see Marino v. City Univ. of New York*, 18 F. Supp. 3d 320, 329 (E.D.N.Y. 2014) (explaining that sovereign immunity bars "direct constitutional claim[s] brought directly against a state entity") (citing *Santiago v. N.Y. State Dep't of Corr. Servs.*, 945 F.2d 25, 30-32 (2d Cir. 1991)); *see also*

8

*Rubin v. N.Y. State Dep't of Motor Vehicles*, No. 10-CV-4119 (NGG), 2010 WL 3842011, at *1 (E.D.N.Y. Sept. 28, 2010) ("The Eleventh Amendment bars suits against states, their agencies whether the [p]laintiff seeks relief at law or in equity, absent the state's consent to suit or an express or statutory waiver of immunity.") (citing *Pennhurst State School & Hosp.*, 465 U.S. at 99-102).

The State Central Register is an arm of New York State Office of Children and Family Services;[11] thus, it is an "arm of the state for purposes of sovereign immunity." *Gerken*, 2024 WL 4608307, at *7 (citing *Calderon v. N.Y.C. Dep't of Homeless Servs.*, No. 24-CV-4631 (VEC), 2024 WL 3429884, at *2 (S.D.N.Y. July 16, 2024) ("[A]s an agency of the State of New York, the New York State Department of Social Services is an arm of the State and is protected by Eleventh Amendment immunity."); *Nicholson v. Williams*, 203 F. Supp. 2d 153, 166 (E.D.N.Y. 2002) ("A state agency, the Office of Children and Family Services ('OCFS'), regulates and monitors local service agencies and maintains the State Central Register for Child Abuse and Maltreatment [].").

"New York has not expressly waived its sovereign immunity with respect to the claims asserted in plaintiff's complaint." *Gerken*, 2024 WL 4608307, at *7 (citing *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) ("[W]e will find waiver only where stated by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.") (internal quotations omitted) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)); *see also Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) (summary order) ("It is well-established that New York has not consented to § 1983 lawsuits in federal court, and that § 1983 was

---

[11] NEW YORK STATE OFFICE OF CHILDREN AND FAMILY SERVICES, https://ocfs.ny.gov/programs/cps/ (last visited May 30, 2025).

not intended to override a state's sovereign immunity.") (internal citations omitted). "Moreover, Congress has not abrogated New York's sovereign immunity in enacting § 1983." *Gerken*, 2024 WL 4608307, at *7 (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 39-40 (2d Cir. 1977); *see also Mayo v. Doe*, 480 F. Supp. 3d 395, 402 (D. Conn. 2020) (holding that "[s]ection 1983 does not abrogate state sovereign immunity") (citing *Quern v. Jordan*, 440 U.S. 332, 342 (1979)). Therefore, plaintiff's § 1983 claims against the State Central Register is barred under the Eleventh Amendment. *See Dixon v. Jordan*, No. 23-CV-9227 (LTS), 2024 WL 37096, at *2 (S.D.N.Y. Jan. 2, 2024) ("Plaintiff's Section 1983 claims against the New York State Child Support Services are therefore barred by the Eleventh Amendment and are dismissed because they seek monetary relief against a defendant who is immune from such relief.") (citations omitted); *Johnson v. New York State Off. of Childrens & Fam. Servs.*, No. 6:24-CV-1371 (GTS/TWD), 2025 WL 523449, at *2 (N.D.N.Y. Feb. 18, 2025) ("Sovereign immunity extends to 'state instrumentalities like the OCFS 'that are, effectively, arms of a state.'") (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)) (additional citations omitted); *see also Davis v. NYS Off. of Child. & Fam. Servs.*, No. 20:CV-1480, 2021 WL 1193044, at *5 (E.D.N.Y. Mar. 30, 2021) ("NYSOCFS is an arm of the State of New York and, as such, enjoys Eleventh Amendment immunity.'")

"The undersigned notes that a dismissal based on the doctrine of sovereign immunity, is consequently a dismissal for lack of subject matter jurisdiction." *Gerken*, 2024 WL 4608307, at *7 (quoting *Griffith v. New York State*, No. 5:23-CV-1266 (DNH/ML), 2024 WL 1641587, at *5 n.4 (N.D.N.Y. Mar. 20, 2024) (citations omitted). Therefore, it is

recommended that plaintiff's claims against the State Central Register be dismissed without prejudice and without opportunity to amend for lack of subject matter jurisdiction. *See id.* (citing *Abadi v. City of New York*, 22-CV-1560, 2023 WL 3295949, at *3 n.3 (2d Cir. May 8, 2023) (summary order) ("Because the Court lacks subject matter jurisdiction . . . the amended complaint should be dismissed without prejudice."); *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction[.]"))

2. *Monell*

a. **CPS**

Plaintiff identifies "NYS CPS" as a state agency for whom the individual defendants worked and the entity that investigated the claim of maltreatment. Compl. at 1, 3. If NY CPS were a state agency and the proper defendant, all claims against it would be barred by sovereign immunity for the same reasons discussed with regard to the State Central Registrar. *See* section III(B)(1)(a)(i), *supra* at 7-11. Although it appears that the State, through OCFS, has oversight over child protective services agencies, each child protective services agency is a county entity.[12] Thus, although plaintiff identifies NYS CPS as the defendant, this entity does not appear to exist. Indeed, review of the complaint and its attachments demonstrates that the child protective services entity involved in the underlying matter is the County of Albany Department for Children, Youth

---

[12] NEW YORK STATE OFFICE OF CHILDREN AND FAMILY SERVICES, https://ocfs.ny.gov/programs/cps/ (last visited May 30, 2025); *see also Nicholson v. Williams*, 203 F. Supp. 2d 153, 166 (E.D.N.Y. 2002) ("The State largely delegates responsibility for enforcing child protection laws to counties and municipalities.").

and Families, Child Protective Services Unit.  *See* Dkt. Nos. 1-3, 1-6.  Thus, plaintiff can only proceed with section 1983 claims pursuant to *Monell*.

"Municipalities may be sued directly under [Section] 1983" pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978) "for constitutional deprivations inflicted upon private individuals pursuant to governmental custom, policy, ordinance, regulation, or decision."  *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (citing *Monell*, 436 U.S. at 690-91). "To set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead that a deprivation of his constitutional rights was 'caused by a governmental custom, policy, or usage of the municipality.'"  *Dougal v. Lewicki*, No. 1:23-CV-1167 (DNH/CFH), 2023 WL 6430586, at *10 (N.D.N.Y. Oct. 3, 2023), *report and recommendation adopted*, 2023 WL 7013384 (N.D.N.Y. Oct. 25, 2023) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978))).  An "official policy or custom" can be pleaded as follows:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees.

*Id.* (quoting *Dorsett-Felicelli, Inc. v. Cty. of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005)) (internal citations omitted); *see also Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (explaining that, to state an official policy claim under *Monell*, the plaintiff "must do more than simply state that a municipal policy . . . exists"); *Coleman v. Cnty. of Suffolk*, 685 F. App'x 69, 72 (2d Cir. 2017) (summary order) ("Where . . . the

conduct of individual defendant officers does not violate the plaintiff's constitutional rights, the municipality is generally not liable for a policy or practice pursuant to which the conduct was performed."); *Fleming v. City of New York*, No. 18-CV-4866 (GBD/JW), 2023 WL 1861223, at *1 (S.D.N.Y. Feb. 9, 2023) (noting that, in some situations, a municipality may be held liable under *Monell* even if a plaintiff is unable to establish liability against individual defendants).

Under *Monell*, the proper defendant is the municipality itself, not the agency. Claims cannot proceed against Albany County Department for Children, Youth and Families, Child Protective Services Unit, as it is "merely [an] administrative arm[] of a municipality [that] do[es] not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2022) (citations omitted); *Rogers v. CPS*, No. 5:20-CV-75 (LEK/ATB), 2020 WL 2059824, at *3 (N.D.N.Y. Apr. 29, 2020) ("Plaintiff cannot sue CPS because it is an administrative arm of Onandaga County.").  Thus, the proper defendant is Albany County.

Here, in addition to misidentifying the defendant, plaintiff has not pled that her constitutional rights were violated due to an official Albany County policy, a persistent and widespread custom or practice, failure to train or supervise, or because a policy-making official's deliberate conduct deprived her of a constitutional right.  *See, e.g.*, *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297-98 (2d Cir. 2020).  Instead, her arguments suggest that the County "should be held liable for the distinct injuries allegedly imposed on plaintiff[] by county employees"; however, "a municipality may not be held liable under 1983 'solely because it employs a tortfeasor.'"  *Mulqueen v. Herkimer Cnty. Child*

*Protective Servs.*, No. 6:22-CV1-301 (TJM/ATB), 2023 WL 4931679, at *6 (N.D.N.Y. Aug. 2, 2023), *report and recommendation adopted*, No. 6:22-CV-1301 (BKS/MJK), 2024 WL 756833 (N.D.N.Y. Feb. 23, 2024) (citing *Cowan v. City of Mt. Vernon*, 95 F. Supp. 3d 624, 643 (S.D.N.Y. 2015) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)).

If "NY CPS" is considered a state agency and the correct defendant, all claims against it would be subject to dismissal for lack of subject matter jurisdiction.  However, it is clear from the complaint and attachments that plaintiff intended to name Albany County Department for Children, Youth and Families, Child Protective Services Unit, a municipal agency.  *See* Dkt. No. 1 at 2; Dkt. Nos. 1-3, 1-4, 1-6, 1-7.  All such claims are still subject to dismissal because (1) Albany County Department for Children, Youth and Families is a municipal arm of Albany County and cannot be sued; and (2) even if plaintiff had named Albany County, because she fails to allege that her constitutional rights were violated as a result of a formal county policy, widespread custom, failure to train or supervise, or that a policy-making official's deliberate conduct deprived her of a constitutional right under *Monell*, she fails to state a claim against the municipality under § 1983.  The undersigned does not, however, recommend plaintiff be given an opportunity to amend to (1) properly name Albany County, or (2) contend that her constitutional rights were violated as a result of a formal policy, widespread custom, failure to train or supervise, or that a policy-making official's deliberate conduct deprived her of a constitutional right because of the many alternate bases for dismissal of the complaint discussed herein that would make such amendment futile.  Thus, it is recommended that plaintiff's complaint be interpreted as intending to be brought against Albany County, instead of NYS CPS and such claims be dismissed for failure to plead a *Monell* claim.

b.  **Individual Defendants**

Plaintiff identifies the individual defendants as state employees.  *See* Compl. at 13. Testa, Miller, and Behan, however, are employees of Albany County Department for Children, Youth and Families, Child Protective Services Unit; thus, they are municipal employees.  *See, e.g.*, Dkt. No. 1 at 2 (petition brought by the Albany County Department for Children, Youth and Families, Child Protective Services Unit); Dkt. No. 1-3 (envelope from Emilie Miller listing her office address as County of Albany, Department for Children, Youth, and Families); Dkt. No. 1-4 (letter from plaintiff identifying that she is "the subject of a report by the Albany County Child Protective Services"); Dkt. No. 1-6 (letter to plaintiff from County of Albany, Department for Children, Youth and Families regarding investigative process); Dkt. No. 1-7 (Bureau of Special Hearings decision noting that Albany County Department for Youth and Families conducted the investigation of the report of suspected maltreatment).  Thus, as section 1983 claims can proceed against the individual defendants only pursuant to *Monell*,[13] plaintiff must contend that the individual defendants violated her constitutional rights as a result of a specific formal policy or widespread custom of the County.  *See, e.g.*, *Dougal*, 2023 WL 6430586, at *10.  As plaintiff has failed to make that allegation, it is recommended that all claims

---

[13]  Although plaintiff does not specify whether she seeks to sue the individual defendants in their individual versus official capacities, "'*Monell* does not apply to individuals who are sued in their individual capacity.' Therefore, Plaintiff cannot assert a *Monell* claim against [an individual officer][] in his individual capacity." *Acquah for J.B. v. City of Syracuse*, No. 5:18-CV-1378 (LEK/DEP), 2020 WL 1510405, at *2 (N.D.N.Y. Mar. 30, 2020) (quoting *Jackson v. Williams*, No. 18-CV-1137, 2017 WL 1162196, at *3 (N.D.N.Y. Mar. 28, 2017) (additional citation omitted)).  Moreover, where a plaintiff names both a municipality and municipal officers in their official capacities, such claims "are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant."  *Golston v. Cortese*, No. 1:21-CV-914 (GTS/CFH), 2022 WL 2657290, at *5 (N.D.N.Y. Apr. 1, 2022), *report and recommendation adopted,* No. 1:21-CV-914 (GTS/CFH), 2022 WL 2071773 (N.D.N.Y. June 9, 2022 (quoting *Sears v. Carmichael*, No. 8:18-CV-909 (DNH/CFH), 2018 WL 7291417, at *2 (N.D.N.Y. Aug. 6, 2018), *report and recommendation adopted*, 2019 WL 587587 (N.D.N.Y. Feb. 13, 2019) (quoting *Wallikas v. Harder*, 67 F. Supp. 2d 82, 83 (N.D.N.Y. Oct. 25, 1999)).

against the individual defendants be dismissed.[14]   As there exist several alternative grounds for dismissal of the individual defendants and the complaint in its entirety, as will be discussed herein, it is not recommended that plaintiff be given leave to amend to state a *Monell* claim against the individual defendants as any such amendment would be futile. *See also supra*. at 15, n.13.

### 3. Personal Involvement

In addition to plaintiff's failure to state a *Monell* claim, plaintiff's claims against Testa also fail because she does not establish her personal involvement in any constitutional violation.  Plaintiff named "Linda Testa, Supervisor" ("Testa") as a defendant; however, plaintiff's complaint does not raise any claims against Testa or include facts about Testa's involvement.  *See generally* Dkt. No. 1.  The only mention of Testa is that she is an employee of the involved child protection agency.  *See* Dkt. No. 1 at 13.  Testa is also referenced in the appended exhibits: (1) her signature on the notices from the Albany Department for Children, Youth and Families, Child Protective Services Unit addressed to plaintiff; (2) being copied on an e-mail from nonparty Chelsea Harrington to defendant Emelie Miller; and (3) a notation that she assigned the underlying CPS case to the caseworkers.  *See* Dkt. No. 1-3 at 3; Dkt. No. 1-6 at 3; Dkt. No. 1-8 at 7.  This is insufficient to demonstrate Testa's personal involvement in the alleged Fourteenth amendment violations.

Further, plaintiff's role as a supervisor is also insufficient to establish personal involvement.  "[I]n order to recover damages in a civil rights action, [the] plaintiff must allege a defendant's direct or personal involvement in the alleged constitutional

---

[14] In addition, the claims against Testa are subject to dismissal for failure to demonstrate her personal involvement, as detailed *infra*.

deprivations, and supervisory officials may not be held liable merely because they held a position of authority." *Golston*, 2022 WL 2657290, at *6, n.7 (quoting *Montes v. O'Shea*, No. 1:21-CV-303 (DNH/ATB), 2021 WL 1759853, at *5 (N.D.N.Y. Apr. 6, 2021), *report and recommendation adopted,* No. 1:21-CV-303, 2021 WL 1758858 (N.D.N.Y. May 4, 2021) (first citing *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994); then citing *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996))).  "[T]here is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id*. (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676)); *see also Davis v. Cnty. of Nassau*, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005) (quoting *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996) (A "complaint must still allege particular *facts* indicating that an individual defendant was personally involved in the deprivation of the plaintiff's constitutional rights; mere 'bald assertions and conclusions of law' do not suffice.")).  "A complaint that essentially regurgitates the relevant 'personal involvement' standard, without offering any facts indicating that, or how, an individual defendant in a supervisory role was personally involved in a constitutional violation, cannot withstand dismissal." *Davis*, 355 F. Supp. 2d at 677 (citations omitted).  "[V]ague, conclusory allegations do not satisfy the personal involvement standard." *Collins v. City Univ. of New York*, No. 21 CIV. 9544 (NRB), 2023 WL 1818547, at *6 (S.D.N.Y. Feb. 8, 2023) (citing *Medina v. Kaplan*, No. 16-CV-7223, 2018 WL 797330, at *6 (S.D.N.Y. 2018)).

Plaintiff's complaint fails to specify how Testa was personally involved in the decision to remove plaintiff's grandchildren from her home, the issuance of the indicated CPS Report, or the State Central Register's failure to implement the December 17, 2021,

Order.  *See generally* Dkt. No. 1.  As stated above, the only connections between Testa and the complaint are (1) she works for CPS; (2) her signature on the notices from the County of Albany Department for Children, Youth and Families; (3) being copied on an e-mail; and (4) a notation that she assigned the underlying CPS case to defendant caseworkers.  *See* Dkt. No. 1 at 13; Dkt. No. 1-3 at 3; Dkt. No. 1-6 at 3; Dkt. No. 1-8 at 7. These isolated connections are not sufficient to demonstrate personal involvement or an individual action giving rise to plaintiff's alleged constitutional violations.  *See Golston*, 2022 WL 2657290, at *6; *Leeds,* 85 F.3d at 53.  Thus, Testa's role as a "Director or Supervisor of Child Protective Services," without more, is not enough to state a claim against her under Section 1983.  *See Tangreti*, 983 F.3d at 618; *Peck v. Cnty. of Onondaga, New York*, No. 5:21-CV-651 (DNH), 2021 WL 3710546, at *9 (N.D.N.Y. Aug. 20, 2021) (quoting *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) ("A defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority.")).

Additionally, reading the complaint liberally and affording plaintiff due solicitude, plaintiff's complaint could be arguing that Testa, individually, as "Director or Supervisor of Child Protective Services," is liable for any actions of the County of Albany Department for Children, Youth and Families staff working under her supervision based on the theory of respondeat superior.  *See* Dkt. No. 1 at 2; Dkt. No. 1-3 at 3; Dkt. No. 1-8 at 7. "*Respondeat superior* is the legal concept that an employer is liable for an employee's torts if that employee is acting within the scope of his or her employment."  *Doe v. Hilton Cent. Sch. Dist.*, 720 F. Supp. 3d 184, 187 (W.D.N.Y. 2024) (citing RESTATEMENT (THIRD) OF TORTS: MISC. PROVISIONS § 3 ("Vicarious Liability of Employers for Torts of Employees

Committed Within the Scope of Employment")).  However, "'there is no special rule for supervisory liability' in Section 1983 cases." *Est. of King ex. rel. King v. Annucci*, 693 F. Supp. 3d 310, 325-26 (N.D.N.Y. 2023) (quoting *Tangreti*, 983 F.3d at 618).

"To establish a violation of § 1983 by a supervisor . . . the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights." *Tangreti*, 983 F.3d at 618 (quoting *Porro v. Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010) (Gorsuch, J.) (internal quotation marks and alteration omitted)).  "The focus is on what the *supervisor* did or caused to be done, 'the resulting injury attributable to his conduct, and the *mens rea* required of him to be held liable, which can be no less than the *mens rea* required of anyone else." *Id.* (quoting *Porro*, 624 F.3d at 1328).  In other words, "[t]he supervisor must have committed the violation him or herself, not by the supervision of others who committed the violation" and "must personally display the requisite state of mind, depending on the violation at issue." *Weston v. Bayne*, No. 9:22-CV-621 (LEK/ATB), 2023 WL 8435998, at *4 (N.D.N.Y. June 28, 2023), *report and recommendation adopted,* No. 9:22-CV-621 (LEK/ATB), 2023 WL 8183219 (N.D.N.Y. Nov. 27, 2023) (citing *Iqbal*, 556 U.S. at 676).  "'The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary." *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676).

Further, "an official's conduct in making and executing policy, or failing to make or execute policy, may satisfy *Iqbal's* requirement of personal involvement if such conduct meets the elements required to establish an underlying constitutional violation and is undertaken with the required state of mind." *Myers o/b/o Est. of Myers v. Davenport*, No.

1:21-CV-0922 (LEK/CFH), 2022 WL 3017367, at *5 (N.D.N.Y. July 29, 2022) (citing *Stone #1 v. Annucci*, No. 20-CV-1326 (RA), 2021 WL 4463033, at *8 (S.D.N.Y. Sept. 28, 2021) (stating that personal involvement exists "where a plaintiff can establish that a senior official promulgated an unconstitutional policy with a culpable mental state")). "[A] plaintiff may establish a policy-making official's personal involvement by, first, alleging facts from which it may be reasonably inferred the official was responsible for making relevant policies, and thus there is a tangible connection between their policymaking conduct and the alleged harm." *Id.* (citing *Stone*, 2021 WL 4463033, at *10). "Second, a plaintiff must establish the elements of the underlying claim directly against each defendant." *Id.*

Here, plaintiff has not established that Testa committed any "deliberate, intentional act" that violated her constitutional rights or acted with the requisite mens rea. *Tangreti*, 983 F.3d at 618; *See* Dkt. No. 59-2 at 10. Equally, plaintiff has not demonstrated that Testa is a policymaker. Although Testa assigned the CPS caseworkers to investigate the dispute between plaintiff and her daughter, plaintiff has not alleged that Testa was (1) responsible for developing the CPS removal policy or executed the policy by directing caseworkers to remove plaintiff's grandchildren from her home, or (2) responsible for developing or executing the procedures by which the State Central Register maintains and updates their records. *See Myers o/b/o Est. of Myers*, 2022 WL 3017367, at *5. As plaintiff's complaint fails to demonstrate Testa's personal involvement in any constitutional violation, this represents an additional ground for dismissal of all claims against her.[15] *See Tangreti*, 983 F.3d at 618; *Myers o/b/o Est. of Myers*, 2022 WL 3017367, at *5.

---

[15] Plaintiff has sufficiently pled that Emilie Miller and Brendan Behan were personally involved in the alleged violation of her Fourteenth Amendment rights because plaintiff claims that these defendants were responsible for removing her grandchildren from her home and who conducted the investigation leading to the CPS Report being returned as indicated. *See* Dkt. No. 1 at 5, 8-9; *see Golston*, 2022 WL 2657290, at

The undersigned concludes that, as to Testa in her official and individual capacities, plaintiff's complaint "fails to state a claim on which relief may be granted" and, therefore, is subject to dismissal.  28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

### 4.  **Quasi-Prosecutorial Immunity**

Plaintiff names "Emilie Miller, Caseworker" ("Miller") and "Brendon Behan, Caseworker" ("Behan") as defendants.  Dkt. No. 1 at 2-3.  Plaintiff alleges that Miller and Behan are responsible for removing her grandchildren from her home and conducted the investigation leading to the CPS Report being returned as indicated.  *See id.* at 5, 8-9.

In addition to plaintiff's failure to state a *Monell* claim against Miller and Behan, plaintiff's claims against them are barred by absolute immunity.  "Absolute immunity protects government officials from suit arising out of acts associated with their 'function as an advocate.'"  *Dees v. Zurlo*, No. 1:24-CV-1 (MAD/DJS), 2024 WL 2291701, at *10 (N.D.N.Y. May 21, 2024), *aff'd sub nom. Dees v. Knox*, No. 24-1574-CV, 2025 WL 485019 (2d Cir. Feb. 13, 2025) (quoting *Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 108 (N.D.N.Y. 2023) (quoting *Buari v. City of New York*, 530 F. Supp. 3d 356, 378 (S.D.N.Y. 2021)).  "In determining whether an official is entitled to absolute immunity, courts employ a functional approach, looking at the nature of the function performed, not the identity of the actor who performed it."  *Id.* (quoting *Jeanty*, 669 F. Supp. 3d at 108) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 394 (2d Cir. 2006)) (internal quotation marks omitted).  "An agency official 'performing functions analogous to those of a prosecutor,' such as investigating a complaint and, thereafter, initiating a prosecution, has absolute immunity from liability in a § 1983 action for damages arising out of the initiation of the action and

---

*6, n.7.  However, as discussed *supra* and *infra*, all claims against these defendants are subject to dismissal on multiple other grounds.

its subsequent prosecution." *Est. of Keenan v. Hoffman-Rosenfeld*, No. 16-CV-149 (SFJ/AYS), 2019 WL 3416374, at *20 (E.D.N.Y. July 29, 2019), *aff'd,* 833 F. App'x 489 (2d Cir. 2020) (summary order) (quoting *Emerson v. City of New York*, 740 F. Supp. 2d 385, 392 (S.D.N.Y. 2010) (quotation omitted)); *DiBlasio v. Novello*, 344 F.3d 292, 296-97 (2d Cir. 2003) (quoting *Butz v. Economou,* 438 U.S. 478 (1978)) ("Absolute immunity is accorded to judges and prosecutors functioning in their official capacities and, under certain circumstances, is also extended to officials of government agencies 'performing certain functions analogous to those of a prosecutor' or a judge."); *D'Alessandro v. City of New York*, 713 F. App'x 1, 5 (2d Cir. 2017) (summary order) (first citing *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005), then quoting *Shmueli*, 424 F.3d at 237 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993))) ("[A] prosecutor unquestionably acts as an advocate – and therefore receives absolute immunity – when she initiates and pursues a criminal prosecution . . . That is, she enjoys absolute immunity for acts she undertakes "in preparing for the initiation of judicial proceedings or for trial."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused." *Dees*, 2024 WL 2291701, at *10 (quoting *Jeanty*, 669 F. Supp. 3d at 108 (quoting *Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (citation omitted)).

"[I]n New York, the Family Court Act authorizes child protective agencies, such as CPS, to originate child protective proceedings." *Est. of Keenan*, 2019 WL 3416374, at *20 (citing *Matter of Diane B.*, 96 Misc. 2d 798, 800 (Fam. Ct. 1978) (citing Family Ct. Act § 1032)). The Second Circuit and District Courts within this Circuit have extended

absolute immunity protections to CPS case workers performing investigative duties. *See Robertson v. Allen*, No. 1:15-CV-11 (GLS/CFH), 2016 WL 205381, at \*10 (N.D.N.Y. Jan. 15, 2016) (citing *Emerson v. City of New York*, 740 F. Supp. 2d 385, 392-93 (S.D.N.Y. 2010) ("Although caseworkers are generally entitled to qualified immunity for their investigative duties . . . plaintiffs, here, complain that [the defendant] filed a false neglect petition. This alleged conduct is more analogous to that of a prosecutor than an investigator, and, thus, [the defendant] is also entitled to absolute immunity."); *Emerson*, 740 F. Supp. 2d at 392-93 (holding that the defendant CPS employees who investigated neglect and abuse proceedings in Family Court "were acting in performance of their duties as quasi-prosecutors and are therefore entitled to absolute immunity from suit.") (citing *Walden v. Wishengrad*, 745 F.2d 149, 152 (2d. Cir. 1984).

Miller and Behan, in their roles as CPS case workers investigated an abuse/neglect report that plaintiff and her daughter were involved in a physical altercation in front of plaintiff's grandchildren and initiated the removal proceeding as "authorized by § 1032 of the Family Court Act." *Est. of Keenan*, 2019 WL 3416374, at \*20 (quoting *Byrne v. City of New York*, 736 F. App'x 263, 265 (2d Cir. 2018) (summary order); *see generally* Dkt. No. 1. Thus, Miller and Behan were "acting in a quasi-prosecutorial manner," and they are entitled to absolute immunity. *Id.*; *Robertson*, 2016 WL 205381, at \*10; *Emerson*, 740 F. Supp. 2d at 392-93.

Therefore, the undersigned recommends that plaintiff's claims against Miller and Behan, in their individual and official capacities, be dismissed with prejudice and without opportunity to amend. *See Gerken*, 2024 WL 4608307, at \*7; *See Est. of Keenan*, 2019 WL 3416374, at \*20; *DiBlasio*, 344 F.3d at 296-97; *Robertson*, 2016 WL 205381, at \*10;

*Emerson*, 740 F. Supp. 2d at 392-93. "[T]here is no requirement that a court address every single potential ground for dismissal where it is clear that a claim should be dismissed." *Gerken*, 2024 WL 4608307, at *5 (quoting *Dees* 2024 WL 2291701, at *13 (citing, *inter alia, Curtis v. Greenberg*, No. 22-252-CV, 2023 WL 6324324, *2 n.3 (2d Cir. Sept. 29, 2023)). However, there are several additional grounds for dismissal.

### 5.  **Statute of Limitations**

"The statute of limitations for claims brought pursuant to § 1983 is determined by state law, and in New York State, the statute of limitations for actions brought pursuant to § 1983 is three years." *Golston*, 2022 WL 2657290, at *3 (quoting *Johnson v. Fargione*, No. 1:20-CV-764 (LEK/CFH), 2021 WL 1406683, at *3 (N.D.N.Y. Feb. 17, 2021), *report and recommendation adopted*, 2021 WL 1404554 (N.D.N.Y. Apr. 14, 2021)). "Where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on § 1915(e)(2)(B) review even though the statute of limitations bar is an affirmative defense." *Id*. (citing *Kunz v. Brazill*, No. 6:14-CV-1471 (MAD/TWD), 2015 WL 792096, at *5 n.2 (N.D.N.Y. Feb. 25, 2015) (citing *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (additional citation omitted)). "Federal constitutional claims accrue once the plaintiff knows or has reason to know of the injury that is the subject of the action." *Id*. (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks and citation omitted); *see also Strong v. New York*, No. 1:19-CV-63 (MAD/CFH), 2019 WL 1763010, at *3 (N.D.N.Y. Apr. 22, 2019), *report and recommendation adopted*, 2019 WL 2723372 (N.D.N.Y. July 1, 2019) (quoting *Singleton*, 632 F.2d at 192) ("[The p]laintiff's § 1983 claims accrued at the

time . . . when he first became aware that he suffered 'from a wrong for which damages may be recovered[.]'").

Liberally construing plaintiff's complaint, her claims accrued on three different dates: (1) November 26, 2019, when CPS removed her grandchildren from her home, *see* Dkt. No. 1-8 at 2-4; (2) July 1, 2020, when the State Central Register notified her that the CPS Report was returned as indicated for child abuse or maltreatment, *see* Dkt. No. 1-6 at 2; and (3) December 21, 2021, when the Bureau of Special Hearings ordered the State Central Register to amend the CPS Report findings from indicated to unfounded, to seal the report, and to update the record of the CPS Report to reflect these changes.[16] *See* Dkt. No. 7 at 10-11. Plaintiff commenced this action on October 3, 2024. *See* Dkt. No. 1.

Concerning the first two incidents, plaintiff knew or should have known of the alleged constitutional violations on November 26, 2019, and July 1, 2020. As such, the three-year statute of limitations would have run on these claims in November 2022 and July 2023. *See Johnson*, 2021 WL 1406683, at *3; *Singleton*, 632 F.2d at 191-192. Thus, plaintiff's claims stemming from November 26, 2019, when her grandchildren were removed from her home, and July 1, 2020, when the CPS Report was returned as indicated, could alternatively "be dismissed with prejudice as the statute of limitations has expired and the defect cannot be cured by amendment of the complaint." *Golston*, 2022 WL 2657290, at *4 (citing *Doe v. Roman Cath. Diocese of Erie, Pa.*, No. 3:20-CV-257

---

[16] The undersigned notes that any claims arising from the events of November 26, 2019, and July 1, 2020, can only be read as being raised against NYS CPS (Albany County), Testa, Miller, and Behan because plaintiff has not alleged that the State Central Register removed her grandchildren from her home or conducted the investigation that returned an indicated CPS Report. Likewise, the only allegation raised against the State Central Register is that the agency failed to comply with the December 21, 2021, Order, and plaintiff's complaint does not suggest that NYS CPS (Albany County), Testa, Miller, or Behan were involved in the noncompliance of the December 21, 2021, Order.

(LEK/ML), 2021 WL 5232742, at *7) (N.D.N.Y. Nov. 10, 2021) ("Because [the p]laintiff's claims are barred by the applicable statute of limitations, any repleading would be futile, and thus, [the p]laintiff[']s claims are dismissed with prejudice.").[17]  Accordingly, in addition to the grounds for dismissal discussed above, plaintiff's claims arising from November 26, 2019, and July 1, 2020, could also be dismissed because the statute of limitations has expired.  *See id*.

Alternatively, as plaintiff's grandchildren were removed from her home on November 26, 2019, plaintiff could be arguing that the continuing violation doctrine applies because the alleged constitutional violation began on this date and continues as the State Central Register still fails to comply with the December 17, 2021, Order.  *See*

---

[17] "In deference to plaintiff's pro se status, the Court has also considered whether equitable tolling might permit [her] statute of limitations to be extended."  *Golston*, 2022 WL 2657290, at *4, n.4 (quoting *Golden v. Gagne*, No. 5:21-CV-85 (DNH), 2022 WL 425485, at *4, n.5 (N.D.N.Y. Feb. 10, 2022).  "Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled, unless state tolling rules would 'defeat the goals' of section 1983."  *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002).  New York tolling rules apply to this matter.  *See id.*  "Under New York law, the doctrines of equitable tolling . . . may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action."  *Id*. (quoting *Doe v. Holy See (State of Vatican City)*, 17 A.D.3d 793, 794, (N.Y. App. Div. 2005) (internal quotations omitted); *Kotlyarsky v. New York Post*, 195 Misc.2d 150 (N.Y. Sup.Ct. 2003).  "Equitable tolling is available in 'rare and exceptional' cases where 'extraordinary circumstances prevented a party from timely performing a required act,' and 'the party acted with reasonable diligence throughout the period' to be tolled."  *Marroccolo v. Coddington*, No. 6:24-CV-1091 (GTS/MJK), 2024 WL 4198365, at *2, n.4 (N.D.N.Y. Sept. 16, 2024), *report and recommendation adopted*, No. 6:24-CV-1091 (GTS/MJK), 2025 WL 396313 (N.D.N.Y. Feb. 5, 2025) (quoting *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005).  Affording plaintiff due solicitude, plaintiff's claims stemming from November 26, 2019, when her grandchildren were removed from her home, and from July 1, 2020, when the CPS Report was returned as indicated, could be reasonably construed as extraordinary circumstances alleging fraud, misrepresentation, or deception by defendants.  However, plaintiff has not alleged that she was prevented from filing a timely action or that she acted with "reasonable diligence" in filing an action.  *Abbas*, 480 F.3d at 641; *Marroccolo*, 2024 WL 4198365, at *2, n.4.  Although plaintiff appealed the CPS Report's findings to have them changed from indicated to unfounded, the relief she sought laid solely in state court and cannot be equitably tolled.  *See Abbas*, 480 F.3d at 641 (first citing *Meyer v. Frank*, 550 F.2d 726, 728-30 (2d Cir.1977), then citing *Williams v. Walsh*, 558 F.2d 667, 673 (2d Cir.1977)) ("[A] plaintiff's pursuit of a state remedy . . . does not toll the statute of limitations for filing a claim pursuant to section 1983.").  Accordingly, the undersigned concludes that plaintiff is not entitled to equitable tolling for the claims arising on November 26, 2019, and from July 1, 2020.  *See Marroccolo*, 2024 WL 4198365, at *2, n.4; *Abbas*, 480 F.3d at 641.  Further, even in the event that equitable tolling could be demonstrated, plaintiff's complaint is subject to dismissal on several other grounds, rendering futile any attempt to amend to demonstrate equitable tolling.

Dkt. No. 1 at 16. "The continuing violation doctrine provides an 'exception to the normal knew-or-should-have-known accrual date' for calculating limitations periods." *Lubavitch of Old Westbury, Inc. v. Inc. Vill. of Old Westbury, New York*, No. 2:08-CV-5081 (GRB/LGD), 2023 WL 6521621, at *16 (E.D.N.Y. Feb. 7, 2023) (citing *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999). "The doctrine allows a plaintiff to bring certain claims that would otherwise be barred by the statute of limitations, provided that 'an act contributing to that [violation] took place within the statutory time period.'" *Id*. (quoting *Purcell v. New York Inst. of Tech. - Coll. of Osteopathic Med.*, 931 F.3d 59, 65 (2d Cir. 2019)). "It applies to particular federal claims that 'by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment.'" *Id*. (quoting *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015)).

"[T]he continuing violation doctrine can be applied when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that collectively constitute one unlawful [act], but the doctrine cannot be applied when the plaintiff challenges conduct that is a discrete unlawful act." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 (2002)) (internal quotation marks omitted). "[T]he limitations period for a continuing offense does not begin until the offense is complete." *United States v. Rivera-Ventura*, 72 F.3d 277, 281 (2d Cir. 1995) (citation omitted). "Because a continuing violation tolls the running of the limitations period until the offense is complete, the date when a violation 'first accrues' is not to be confused with the date when a violation 'first occurs.'" *Cornerstone Realty, Inc. v. Dresser Rand Co.*, 993 F. Supp. 107, 115 (D. Conn. 1998) (quotation omitted).

If the continuing violation doctrine were determined applicable, the offense was "not complete" until December 17, 2021, when the Bureau of Special Hearings directed the CPS Report findings to be changed from indicated to unfounded. *See* Dkt. No. 1-7. In turn, any claims stemming from November 26, 2019, or July 1, 2020, would fall within the three-year statute of limitations, and, thus, not be barred, because the accrual period would not begin until December 17, 2021, and plaintiff commenced this action on October 3, 2024.[18] *See United States*, 72 F.3d at 281; *Cornerstone Realty, Inc.*, 993 F. Supp. at 115.

However, the undersigned does not recommend applying the continuing violation doctrine to this matter because the State Central Register's failure to comply with the December 17, 2021, Order is a separate "discreet" act from CPS' removal of plaintiff's grandchildren from her home and the CPS Report found to be indicated. *Shomo*, 579 F.3d at 181. However, should the District Judge disagree, and conclude that the claims arising from the November 26, 2019, removal of plaintiff's grandchildren constitute "a series of separate acts that constitute one unlawful [act]" and are not time barred by the statute of limitations, the undersigned still recommends dismissal for the reasons discussed above and the additional grounds for dismissal discussed below. *Id*.

### 6. **Domestic Relations Abstention Doctrine**

"Under the domestic relations exception . . . cases involving divorce, alimony, and child custody remain outside federal court jurisdiction." *Bowman v. Morris*, No. 8:19-CV-

---

[18] In the interest of thoroughness, the undersigned concludes that plaintiff's claim accruing on December 17, 2021, which involved the Bureau of Special Hearings ordering the State Central Register to amend the CPS Report findings from indicated to unfounded, to seal the report, and to update the record of the CPS Report to reflect these changes, is not barred by the statute of limitations because plaintiff commenced this action on October 3, 2024. *See Johnson*, 2021 WL 1406683, at *3; *Singleton*, 632 F.2d at 191-192; Dkt. No. 1.

97 (BKS/DJS), 2019 WL 5150196, at *5 (N.D.N.Y. Apr. 10, 2019), *report and recommendation adopted,* No. 8:19-CV-97 (BKS/DJS), 2019 WL 3759174 (N.D.N.Y. Aug. 9, 2019) (citing *Marshall v. Marshall*, 547 U.S. 293, 308 (2006)).  "When a case calls for a federal court to interpret state domestic relations law or 'immerse itself in domestic relations matters,' the court must abstain from proceeding with the case due to the state courts' 'greater interest and expertise' in that field."  *Evans v. Adams*, 714 F. Supp. 3d 119, 124 (E.D.N.Y. 2024) (quoting *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990)).

"Courts in this circuit routinely dismiss actions for lack of subject matter jurisdiction, due to the domestic relations abstention doctrine, where the plaintiff is seeking review of child [custody] proceedings."  *Gerken*, 2024 WL 4608307, at *6 (citing *Neustein v. Orbach*, 732 F. Supp. 333, 339-40 (E.D.N.Y. 1990) (holding that the Court lacked jurisdiction over factual disputes connected to domestic relations issues)); *Pynn v. Pynn*, No. 24-CV-508 (LJV), 2024 WL 3647783, at *8 (W.D.N.Y. Aug. 5, 2024) (noting that "[c]ourts in this circuit have found abstention appropriate when the plaintiff asked a federal court to review and overturn state court rulings related to child custody and divorce.").  "While the domestic relations exception is narrow, it applies generally to issues relating to the custody of minors, and may also apply to civil rights actions directed at challenging the results of domestic relations proceedings." *Licata v. Kaplan*, No. 16-CV-2928 (JMA/GRB), 2017 WL 6379606, at *11, n.7 (E.D.N.Y. Dec. 12, 2017) (quoting *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (internal quotations omitted)); *see also Guichiardo v. Barrazza*, No. 16-CV-1222, 2016 WL 3541547, at *3 (E.D.N.Y. Jun. 23, 2016) (applying the domestic

relations exception where the plaintiff "style[d] some of her claims as raising constitutional issues, but the allegations stem from a state domestic relations matter . . . .").

Plaintiff challenges the constitutionality of the State Central Register's failure to abide by and implement the terms of the December 17, 2021, Bureau of Special Hearings Order.  *See* Dkt. No. 1 at 16.  However, "[t]he doctrine of domestic relations abstention means that this Court does not have jurisdiction over the plaintiff's claims."  *Sekou Camera v. N.Y.C. Dep't of Soc. Servs.*, No. 24-CV-5886 (AMD/TAM), 2024 WL 4107256, at *2 (E.D.N.Y. Sept. 5, 2024); *see also Robinson v. Admin. Child. Servs.,* No. 23-CV-2058 (EK)(TAM), 2025 WL 917198, at *3-4 (E.D.N.Y. Mar. 25, 2025) (abstaining from exercising jurisdiction over a matter arising from child neglect and removal proceedings due to the domestic relations abstention doctrine); *Cleveland v. Schenectady Cnty.*, No. 1:16-CV-1235 (NAM/DJS), 2018 WL 11540911, at *7-8 (N.D.N.Y. Mar. 15, 2018) (same); *Davila v. Arias*, No. 24-CV-2904 (NRM/LB), 2024 WL 4593499, at *2 (E.D.N.Y. Oct. 28, 2024) ("The claims for which Plaintiff seeks relief, regardless of how he attempts to frame them, arise from a dispute concerning the custody of his child, and thus, his claims fall within the ambit of the domestic relations abstention doctrine."); *Hirsch v. Kairey*, No. 22-CV-6716 (EK/VMS), 2023 WL 4902749, at *4-5 (E.D.N.Y. Aug. 1, 2023) (same).

Thus, plaintiff's claim seeking enforcement of the Bureau of Special Hearings December 21, 2021, order directing the State Central Register to amend the CPS Report findings from indicated to unfounded, to seal the report, and to update the record of the CPS Report to reflect these changes is also subject to dismissal under the domestic relations abstention doctrine.[19]  *See Pynn*, 2024 WL 3647783, at *8; *Robinson*, 2025 WL

---

[19] To the extent that plaintiff's state court proceeding remains ongoing because the State Central Register has yet to comply with the December 17, 2021, Bureau of Special Hearings Order, the undersigned notes

917198, at *1; *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999) ("[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice.").

### 7. **Fourteenth Amendment: Post-Deprivation Remedy**

Affording her due solicitude, plaintiff argues that her Fourteenth Amendment procedural due process rights have been violated because the State Central Register has not changed the status of the CPS Report in their system from indicated to unfounded and sealed the report, despite being so ordered on December 17, 2021.  *See* Dkt. No. 1 at 16.

The Due Process Clause provides that a State may not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "The two threshold questions in any procedural due process claim are: (1) whether the plaintiff possessed a protected liberty or property interest protected by the United States Constitution or federal statutes[,] and (2) if so, what process was due before plaintiff could be deprived of that interest."  *Barzee v. Tyler*, No. 8:21-CV-902 (GTS/CFH), 2022 WL 1406606, at *7 (N.D.N.Y. May 3, 2022), *report and recommendation adopted,* No. 8:21-CV-902 (GTS/CFH), 2022 WL 2079084 (N.D.N.Y. June 9, 2022) (quoting *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) (internal quotation marks omitted)).

"However, there can be no Due Process Clause violation so long as the State provides a meaningful postdeprivation remedy."  *Nicholas v. Seggos*, No. 8:23-CV-463

---

that the *Younger* abstention doctrine could apply.  *See Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Younger v. Harris, 401 U.S. 37*, 43-44 (1971) (Pursuant to the *Younger* abstention doctrine, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").  However, in light of the many other grounds for dismissal, the undersigned declines to reach this ground.

(GTS/CFH), 2023 WL 6121164, at *6 (N.D.N.Y. Sept. 19, 2023), *report and recommendation adopted,* No. 8:23-CV-463 (GTS/CFH), 2023 WL 7004103 (N.D.N.Y. Oct. 24, 2023) (quoting *Clark v. Dominique*, 798 F. Supp. 2d 390, 401 (N.D.N.Y. 2011) (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) (internal quotation marks omitted)). "In New York State, an Article 78[20] proceeding provides an avenue of post[-]deprivation redress that satisfies due process requirements." *Id.* (quoting *Clark*, 798 F. Supp. 2d at 401); *see also Rhee-Karn v. Burnett*, No. 13 CIV. 6132 (JPO), 2014 WL 4494126, at *5 (S.D.N.Y. Sept. 12, 2014) ("An Article 78 petition is the proper vehicle for challenging state actions taken in violation of the Federal Constitution." (citations omitted)).  "[I]t matters not whether a plaintiff actually avails [him]self of the state court post-deprivation process. So long as that process is available, a due process claim must be dismissed." *Id.* (quoting *Clark*, 798 F. Supp. 2d at 401) (quoting *Longo v. Suffolk Cnty. Police Dep't*, 429 F. Supp. 2d 553, 560 (E.D.N.Y. 2006)).  "In contrast, when the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing. Under those circumstances, the availability of post-deprivation procedures will

---

[20] N.Y. C.P.L.R. § 7803 provides that:

> The only questions that may be raised in a proceeding under this article are:
> 1. whether the body or officer failed to perform a duty enjoined upon it by law; or
> 2. whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or
> 3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed; or
> 4. whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence.

N.Y. C.P.L.R. § 7803.

not, *ipso facto,* satisfy due process." *Id.* (quoting *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (citation and internal quotation marks omitted)).

"Generally, [t]hose who wish to challenge agency determinations under article 78 may not do so until they have exhausted their administrative remedies[.]" *Nicholas*, 2023 WL 6121164, at *6 (quoting *Walton v. New York State Dept. of Correctional Servs.*, 863 N.E.2d 1001, 1006 (N.Y. 2007) (internal quotation marks omitted)). "Absent exceptional circumstances, it is only after such a hearing is held, and a final determination made, that an aggrieved party may bring a[n] article 78 proceeding to challenge the legality of the determination[.]" *Id.* (quoting *Matter of Pyramid Co. of Onondaga v. Hudacs*, 597 N.Y.S.2d 816, 818 (N.Y. App. Div. 1993). Alternatively, "[a]n article 78 proceeding may lie in the absence of a final determination where the relief sought is by way of prohibition or by way of mandamus to compel performance by an administrative agency of a duty enjoined by law." *Id.* (quoting *Hamptons Hosp. & Med. Ctr., Inc. v. Moore*, 417 N.E.2d 533, 537 (N.Y. 1981) (footnote omitted)). "Mandamus for such purpose, however, lies only where the right to relief is 'clear' and the duty sought to be enjoined is performance of an act commanded to be performed by law and involving no exercise of discretion." *Id.* (quoting *Hamptons Hosp. & Med. Ctr., Inc*, 417 N.E.2d at 537 (citation omitted)); *see also Hoffmann v. New York State Indep. Redistricting Comm'n*, 192 N.Y.S.3d 763, 768-69 (N.Y. App. Div. 2023) (citations omitted) ("Discretionary acts involve the exercise of judgment that may produce different and acceptable results[.]").

Here, plaintiff seeks an order directing the State Central Register to change the status of the CPS child abuse and maltreatment report in their system from indicated to

unfounded and seal the report.  *See* Dkt. No. 1 at 16.  Plaintiff claims that despite the Bureau of Special Hearings' December 17, 2021, Order directing such relief, the State Central Register has failed to act.  *See id.*

"Plaintiff is not challenging any established state procedure purportedly denying [her] procedural due process; rather, [her] allegations are directed at" a state agency and its failure to act. *Barzee*, 2022 WL 1406606, at *8.  "However, an Article 78 proceeding is an adequate post-deprivation remedy in New York State." *Id*. (citing *Hellenic*, 101 F.3d at 882).  "Plaintiff provides little to no explanation as to what, if anything, is preventing [her] from initiating an Article 78 proceeding." *Id*.; *see also generally* Dkt. No. 1.  Plaintiff claims that she has "reached out to [the State Central Register's] office numerous times without a response regarding this matter."  Dkt. No. 1 at 16.  Yet, plaintiff does not "demonstrate that plaintiff is unable to commence an Article 78 proceeding in state court and plaintiff has not otherwise plead facts alleging that such proceeding would be inadequate." *Barzee*, 2022 WL 1406606, at *8.  "Thus, an Article 78 proceeding would be the appropriate avenue for relief, which is adequately available to plaintiff under state law." *Id*.; N.Y. C.P.L.R. § 7803.  "As plaintiff has not attempted to pursue such remedy, [her] constitutional rights have not been violated." *Id*.  Therefore, plaintiff's availability of an adequate remedy provides an alternative ground for dismissal of plaintiff's Fourteenth Amendment due process claim as to the State Central Register.  *See Barzee*, 2022 WL 1406606, at *8; N.Y. C.P.L.R. § 7803.  Accordingly, plaintiff's claims as against the State Central Register could alternatively be dismissed "for lack of subject-matter jurisdiction, because it should have been brought in New York state court under Article 78 of the New York State Civil Practice Law and Rules ("Article 78")." *Jones-Bey v. Stanislov*, No. 23-

CIV-5599 (DEH), 2024 WL 3520636, at *3 (S.D.N.Y. July 23, 2024); *Morningside Supermarket Corp. v. New York State Dep't of Health*, 432 F. Supp. 2d 334, 346 (S.D.N.Y. 2006) (quoting *Blatch ex rel. Clay v. Hernandez,* 360 F.Supp.2d 595, 637 (S.D.N.Y.2005)) ("Three district courts in this Circuit have recently concluded that Article 78 claims brought in federal court 'must be dismissed for lack of subject matter jurisdiction, as New York State has not empowered the federal courts to consider such claims.'").

## IV. **Leave to Amend**

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Romano v. Lisson*, 711 F. App'x 17, 19 (2d Cir. 2017) (summary order) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quotation omitted)). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.'" *Edwards v. Penix*, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Here, the claims against the State Central Register are barred by sovereign immunity, and there are several alternate grounds for dismissal against the County and individual defendants, as detailed herein, rendering amendment futile. Accordingly, it is recommended that the complaint be dismissed in its entirety without prejudice and without opportunity to amend as detailed herein.

## IV. **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) as alleged against the State Central Register be **DISMISSED without prejudice and without opportunity to amend** for lack of subject matter jurisdiction;[21] and it is further

**RECOMMENDED**, that the remainder of the complaint (Dkt. No. 1) and defendants be **DISMISSED with prejudice and without opportunity to amend** as follows for failure to state a claim upon which relief can be granted:

(1) Plaintiff's complaint as alleged against defendant Testa be dismissed for failure to state a *Monell* claim, the expiration of the statute of limitations, and the Domestic Relations Abstention Doctrine;

(2) Plaintiff's complaint as alleged against defendants Miller and Behan be dismissed due to absolute immunity, failure to state a *Monell* claim, the expiration of the statute of limitations, and the Domestic Relations Abstention Doctrine;

(3) Plaintiff's complaint as alleged against defendant NY CPS be interpreted as being brought against Albany County, and such claims be dismissed for failure to state a *Monell* claim, the expiration of the statute of limitations, and the Domestic Relations Abstention Doctrine; and it is further

---

[21] Plaintiff's claim as alleged against the State Central Register is also alternatively subject to dismissal due to the existence of an adequate post-deprivation remedy. *See supra* at 30-34.

**RECOMMENDED**, that, if the District Judge adopt this Report-Recommendation & Order, the Clerk be directed to amend the docket to reflect that Albany County, not NYS CPS, is the proper defendant; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[22]

Dated:  June 20, 2025
Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge

---

[22] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen-day (14) period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. *See* FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. *See id.* § 6(a)(1)(c).